J-S72039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

      v.

KAREN PALAIA

            Appellant

: IN THE SUPERIOR COURT OF
:       PENNSYLVANIA
:
:
:
:
:
:
:
:
:
: No. 1334 EDA 2017

Appeal from the Judgment of Sentence September 30, 2016
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000719-2016

BEFORE: BENDER, P.J.E., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:         **FILED DECEMBER 11, 2017**

Appellant, Karen Palaia, appeals from the judgment of sentence entered in the Court of Common Pleas of Monroe County after a jury found her guilty on twelve counts of intentionally possessing a controlled substance and one count of theft by unlawful taking. Sentenced to not less than one month nor more than 12 months' incarceration, to be followed by nine months' probation, Appellant challenges the sufficiency of the evidence, the court's exercise of sentencing discretion, and asserts that prosecutorial misconduct tainted both her trial and sentencing. We affirm.

The trial court aptly sets forth the facts and procedural history pertinent to the present appeal as follows:

> Karen Palaia [hereinafter "Appellant"] was arrested on January 20, 2016, and charged with twelve counts of intentionally possessing a controlled substance, [35 P.S. § 780-113(a)(16),] as

_____

\* Former Justice specially assigned to the Superior Court.

well as one count of theft by unlawful taking[, 18 Pa.C.S. § 3921(a)]. Appellant was accused of stealing twelve pills of Adderall from a locked medicine cabinet located in the nurse's office at East Stroudsburg High School South ("the school"), where Appellant was employed as a security officer. Affidavit of Probable Cause. . . . Appellant was convicted of all 13 charges after a trial by jury.

Appellant appeared for sentencing on August 11, 2016, at which time sentencing was continued to September 29, 2016, to permit Appellant to undergo a urinalysis and sign releases necessary to allow the Monroe County Probation Department to confirm any medication prescribed to Appellant with her treating physicians. Order of Court, August 11, 2016. . . . Appellant was sentenced on September 30, 2016, to one to twelve months' incarceration and a consecutive nine-month period of probation. Order of Court, September 30, 2016. Appellant was released on parole on October 31, 2016. Order of Court, October 25, 2016[.]

Appellant filed Post-Sentence Motions on October 11, 2016, asserting that (1) the evidence submitted at trial was insufficient to sustain the jury's verdict, (2) th[e trial] court abused its discretion in sentencing Appellant to a term of incarceration, and (3) the prosecution denied Appellant a fair trial by, *inter alia*, filing a vague and misleading information. [After reviewing Appellant's supporting brief (the Commonwealth filed no brief in opposition), the trial court] issued an opinion and order on March 22, 2017, in which [it] denied Appellant's Post-Sentence Motions.

Trial Court Opinion, filed 5/17/17, at 1-4.

Appellant timely filed a counseled Notice of Appeal on April 18, 2017. On April 21, 2017, the trial court entered an Order on the docket directing Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. Accordingly, Appellant's Rule 1925(b) Statement was due on or before May 12, 2017. The trial court's Order notified Appellant that any issue not properly included in

this Statement timely filed and served pursuant to Pa.R.A.P. 1925(b) would be deemed waived.

On May 17, 2017, the trial court filed a Rule 1925(a) Opinion in which the court indicated that, as of that date, Appellant had not filed a Rule 1925(b) Statement as ordered.  The trial court opined, therefore, that Appellant had waived all issues and requested that this Court quash the present appeal.

In response to the trial court's opinion, Appellant filed a counseled motion with the trial court seeking permission to file his concise statement *nunc pro tunc*.  On May 24, 2017, the trial court entered an order denying Appellant's motion, but it requested, in the interest of judicial economy, that this Court address the merits of Appellant's appeal without first remanding for the filing of a supplemental Pa.R.A.P. 1925(a) Opinion because the issues raised herein are identical to those disposed of in the trial court's order and opinion denying Appellant's post-sentence motions.  Trial Court Order, filed 5/24/17.

Pa.R.A.P. 1925(c)(3) provides that if an appellant court is convinced counsel has been *per se* ineffective in failing to file a court-ordered Rule 1925(b) statement in a criminal matter, the court shall remand for the filing of a concise statement *nunc pro tunc*.  The Comment to Rule 1925 explains, and this Court has noted, "[paragraph (c)(3)] allows an appellate court to remand in criminal cases *only when the appellant has completely failed to respond to an order to file a Statement*."  Note to Pa.R.A.P. 1925 (emphasis

provided); *see also Commonwealth v. Hill*, 16 A.3d 484, 496 n. 15 (Pa.Super. 2011).

Here, although counsel failed to file a timely court-ordered 1925(b), he did file a motion to the court, immediately upon receiving the trial court's Pa.R.A.P. 1925(a) statement recommending quashal, explaining the reasons for his inadvertent filing omission, advising the court of the issues Appellant wished to raise, and seeking the trial court's permission to file a *nunc pro tunc* Statement to that effect. Therefore, in our view, there is absent in this case the "complete failure" to respond to an order to file a 1925(b) Statement contemplated by Pa.R.A.P. 1925(c)(3).

Moreover, there is no dispute below that the trial court's Order and Opinion denying Appellant's post-sentence motions addressed the very issues now raised before this Court, thus obviating the need for remand for preparation of a responsive trial court opinion. Hence, we agree with the trial court that the better course is to act in the interest of judicial economy and view Appellant's belated filing with the trial court as a proper statement of matters complained of on appeal.

Appellant presents the following three questions for our review:

I. **WAS THE CIRCUMSTANTIAL EVIDENCE PRESENTED SUFFICIENT TO SHOW BEYOND A REASONABLE DOUBT THAT [APPELLANT] COMMITTED THEFT AND POSSESSED A CONTROLLED SUBSTANCE BELIEVED TO BE ADDERALL?**

II. **DID THE COURT ABUSE ITS DISCRETION IN IMPOSING A SENTENCE OF INCARCERATION WHERE**

> **[APPELLANT] HAD A ZERO PRIOR RECORD SCORE AND THE PRE-SENTENCE INVESTIGATION RECOMMENDED PROBATION?**
>
> **III. WAS THE PROSECUTOR IN THIS CASE SO BIASED AGAINST [APPELLANT] SO AS TO DENY HER A FAIR TRIAL AND FUNDAMENTAL DUE PROCESS?**

Appellant's brief at 7.

After a thorough review of the record, Appellant's brief, controlling case law, and the well-reasoned opinion of the trial court, we conclude that Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of each question presented. Accordingly, we adopt the reasoning of the trial court in this regard and affirm on this basis.[1]

---

[1] Appellant's third question presented asserts that the Commonwealth engaged in prosecutorial misconduct when it filed a criminal information listing January 20, 2016, as the sole offense date but presented evidence of Appellant's alleged criminal conduct occurring on December 9, 2015. "The Commonwealth knew or should have known the date of the offense it was intending to pursue occurred on or about December 10, 2015, not January 20, 2016, over a month later[,]" Appellant argues. Brief for Appellant, at 23. This disconnect between the criminal information and the evidence presented denied her the right to prepare adequately a defense to sufficiently specific charges, Appellant contends.

We disagree. Our review confirms the criminal information lists January 20, 2016, as the date of the eleven counts against her. In addition, January 20, 2016, was also listed as an offense date on page one the criminal complaint. Police Criminal Complaint, 2/25/16, at 1. However, in describing the conduct that formed the basis for charges against Appellant, the criminal complaint specified that Appellant "did on December 9, 2015. . . unlawfully [take] or exercised unlawful control over, movable property of another with intent to deprive him thereof, that is to say Palaia did take twelve (12) – 5 mg pills of Adderall from a locked medication cabinet in the nurse's office…. *Id.* at 2. The complaint also bases the possession of a controlled substance offense on Appellant's possession of the 12 pills of Adderall taken on that day. *Id*.

Judgment of sentence is AFFIRMED.

---

Furthermore, the affidavit of probable cause indicated that the affiant, Detective Mario Orlando of the Monroe County Office of the District Attorney, took a complaint regarding the missing Adderall on January 20, 2016, but it listed the date of the theft as December 9, 2015, and the date of discovery of the missing pills as December 10, 2015. The detective's affidavit also indicated that he viewed a surveillance video recorded on December 9, 2015 capturing Appellant opening the locked medication cabinet on the evening of December 9, 2015. When confronted with the video, a Mirandized Appellant told the detective she took only her potassium pills from the cabinet, the affidavit stated.

Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. "In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one." *Commonwealth v. Proctor*, 156 A.3d 261, 271 (Pa. Super. 2017). Moreover, the purpose of advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense. *Commonwealth v. Gibbons*, 784 A.2d 776 (Pa. 2001).

Under the present facts, we cannot conclude that the Commonwealth deprived Appellant a fair trial by listing one offense date on the criminal information but presenting at trial evidence involving a different date that appeared in both the offense section and the affidavit of probable cause section of the criminal complaint. Indeed, Appellant had sufficient notice to prepare a defense to charges that she unlawfully took twelve Adderall pills from the school nurse's office on the evening of December 9, 2015. Such notice was amply reflected in trial counsel's unwavering defense, which was clearly designed to convince the jury that it should form reasonable doubt from events occurring from late November through and including December 9, 2015. Accordingly, we concur with the trial court's conclusion rejecting Appellant's prosecutorial misconduct claim.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/11/2017</u>

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA   :   No. 719 CR 2016
                                        :

            v.                          :

KAREN PALAIA,                 :     POST-SENTENCE MOTIONS
                                          :

        Defendant            :

## OPINION

This case comes before the Court on Post-Sentence Motions filed by

Defendant, Karen Palaia. For reasons detailed below, we DENY these Post-

Sentence Motions.

## FACTS AND PROCEDURAL HISTORY

Karen Palaia (hereinafter "Defendant") was arrested on January 20,

2016, and charged with twelve counts of intentionally possessing a controlled

substance,[1] as well as one count of theft by unlawful taking.[2] Defendant was

accused of stealing twelve pills of Adderall from a locked medicine cabinet

located in the nurse's office at East Stroudsburg High School South (the

"school"), where Defendant was employed as a security officer. Affidavit of

Probable Cause.

---

[1] 35 P. S. § 780-113(a)(16)
[2] 18 Pa. C.S. § 3921(a)

Sometime in late November or early December of 2015, the head nurse at the school learned that some Adderall pills belonging to a student ("V.S.") had gone missing. Transcript of Proceedings at 31-32, June 9, 2016. V.S.'s Adderall pills had been stored in the center of a locked medicine cabinet in the nurse's office. *Id.* at 31, 94. The head nurse notified several officials at the school of the missing medicine, including Officer Robert Sutter, the school's resource officer. *Id.* After consulting with his chief, Frederick Mill, Officer Sutter directed Brad Fitzpatrick, an administrative support analyst at the school, to set up a motion-activated camera in the nurse's office. *Id.* at 86-88. The nurses also began keeping an inventory log of the medication stored in the locked medicine cabinet, noting whenever medicine was received or dispensed, the amount received or dispensed, and the amount remaining. *Id.* at 35.

At some point prior to V.S.'s medicine disappearing, Defendant had approached the head nurse of the school and asked if she could store a bottle of potassium pills in the locked medicine cabinet. *Id.* at 29. The head nurse permitted Defendant to do so, and placed Defendant's potassium pills in the top right corner of the medicine cabinet. *Id.* The head nurse advised Defendant that she would not be able to access the cabinet after 3:00 in the afternoon, when the nurses leave for the day. *Id.* None of the nurses at the school have ever dispensed a potassium pill to Defendant. *Id.* at 30, 61, 71.

2

After learning that some of V.S.'s pills had gone missing, V.S.'s mother sent a letter to the head nurse dated December 4, 2015, in which she enclosed 45 Adderall pills. *Id.* at 19-21. The head nurse verified that there were 45 pills enclosed, as did another nurse that worked at the school. *Id.* at 33. On December 10, 2015, while maintaining the inventory log, the head nurse realized that 12 of V.S.'s Adderall pills had gone missing. *Id.* at 39. Officer Sutter reviewed the tape from the motion-activated camera for the night of December 9, 2015, which revealed that Defendant had entered the nurse's office at about 8:16 that evening and accessed the locked medicine cabinet. *Id.* at 89-92.

Officer Sutter and Chief Mill interviewed Defendant on December 10, 2015, at which time she denied taking V.S.'s Adderall, and instead indicated that she had accessed the locked medicine cabinet in order to take her potassium pills. *Id.* at 96, 110. Defendant told Officer Sutter and Chief Mill that she had found a key to the medicine cabinet in a junk drawer in the school's main office. *Id.* at 97. She also indicated that she had previously moved her potassium pills to a lower portion of the medicine cabinet so that she would be able to reach them. *Id.* at 110. Defendant was later interviewed by Detectives from the Monroe County District Attorney's office, at which time she again indicated that she had only accessed the locked medicine cabinet to take her potassium pills. *Id.* at 118, 135.

3

The Commonwealth filed an Information on April 9, 2016, alleging that, on or about January 20, 2016, Defendant unlawfully took movable property of another with the intent to deprive said person thereof. The Information also included 12 identical counts, each alleging that, on or about January 20, 2016, Defendant knowingly or intentionally possessed a controlled substance. Defendant was convicted of all 13 charges after a trial by jury. *Id.* at 210-212.

Defendant appeared for sentencing on August 11, 2016, at which time sentencing was continued to September 29, 2016, to permit Defendant to undergo a urinalysis and sign releases necessary to allow the Monroe County Probation Department to confirm any medication prescribed to Defendant with her treating physicians. Order of Court, August 11, 2016. Defendant did not appear on September 29, 2016, but her attorney advised the Court that she was attending her sister's funeral. Order of Court, September 29, 2016. Sentencing was continued to the following day. *Id.* Defendant was sentenced on September 30, 2016, to one to twelve months incarceration and a consecutive nine month period of probation. Order of Court, September 30, 2016. Defendant was released on parole on October 31, 2016. Order of Court, October 25, 2016, Cheslock, J.

Defendant filed Post-Sentence Motions on October 11, 2016, asserting that (1) the evidence submitted at trial was insufficient to sustain the jury's verdict, (2) this Court abused its discretion in sentencing Defendant to a term

4

of incarceration, and (3) the prosecution denied Defendant a fair trial by, *inter alia,* filing a vague and misleading information. We ordered Defendant to file a supporting brief within thirty days, and the Commonwealth to file a brief in opposition within forty-five days. Order of Court, November 21, 2016. We later amended this briefing schedule to reflect that Defendant's supporting brief and the Commonwealth's brief in opposition were due within thirty and forty-five days of the filing of the transcripts, respectively. Order of Court, December 20, 2016. The transcripts were filed on December 23, 2016. On Defendant's motion, we allowed Defendant until January 27, 2017 to file her supporting brief. Order of Court, January 24, 2017. Defendant filed her supporting brief on January 27, 2017. The Commonwealth did not file a brief in opposition.

After reviewing Defendant's Post-Sentence Motions and brief in support thereof, we are prepared to render this opinion.

## DISCUSSION

*The Evidence Presented at Trial was Sufficient to Sustain the Jury's Verdict*

Defendant first asserts that the evidence submitted at trial was insufficient to support the jury's verdict. Post-Sentence Motions at ¶ 7. Specifically, Defendant asserts that the Commonwealth's evidence that she committed an act of theft is "equivocal at best," and that the only evidence

5

identifying the controlled substance was "unsubstantiated hearsay."

Memorandum in Support of Post-Sentence Motions at 3-4. We disagree.

> In determining the sufficiency of the evidence, we must consider whether, viewing all the evidence at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there exists sufficient evidence to enable the trier of fact to find every element of the crime proved beyond a reasonable doubt.

*Commonwealth v. Santiago,* 382 A.2d 1200, 1201 (Pa. 1978).

1. The Commonwealth Presented Sufficient Evidence to Sustain the Guilty Verdict of Theft by Unlawful Taking.

"A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa. C.S. § 3921(a). At trial, the Commonwealth presented evidence that twelve Adderall pills belonging to V.S. went missing from the locked medicine cabinet in the nurse's office at the school on December 9, 2015. Transcript of Proceedings at 37-39, 93-94, 107; June 9, 2016. The Commonwealth also presented a video of the Defendant entering the nurse's office and accessing the locked medicine cabinet from which these pills were taken on the night of December 9, 2015. *Id.* at 89-92. No other motion was captured in the nurse's office by the camera on the night of December 9, 2015. *Id.* at 90.

Defendant maintains that she accessed the locked medicine cabinet in the nurse's office at the school on the night of December 9, 2015, in order to obtain her potassium pills, an explanation she characterizes as "equally as

6

likely" as the Commonwealth's theory that she was stealing V.S.'s Adderall pills. Memorandum in Support of Post-Sentence Motions at 3. We will not now disturb the jury's conclusion as to the credibility of this explanation, as the record contains legitimate reasons to discredit it. Officer Sutter testified that Defendant's potassium pills were located towards the top of the medicine cabinet, although Defendant does not appear to be reaching to this location in the video. Transcript of Proceedings at 94-95, June 9, 2016. Additionally, each nurse that worked at the school testified that they had never actually dispensed a potassium pill to Defendant. *Id.* at 30, 61, 71.

Viewing this evidence in the light most favorable to the Commonwealth, the video demonstrating that the Defendant was the only person to enter the nurse's office on the night of December 9, 2015, at which time she accessed the locked medicine cabinet from which pills were taken that night, was sufficient to enable the jury to find, beyond a reasonable doubt, that she took V.S.'s Adderall pills with the intent to deprive her thereof.

2. The Commonwealth Presented Sufficient Evidence to Sustain the Guilty Verdicts of Knowingly or Intentionally Possessing a Controlled Substance.

"Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under [The Controlled Substance, Drug, Device and Cosmetic Act]" is prohibited. 35 P.S. § 780-113(a)(16). The Commonwealth presented evidence that twelve Adderall pills went missing

7

from the locked medicine cabinet in the nurse's office at the school on the night of December 9, 2015. Transcript of Proceedings at 37-39, 93-94, 107; June 9, 2016. The Commonwealth also presented a recording from a motion-activated camera demonstrating that the Defendant was the only person to enter the nurse's office on the night of December 9, 2015, at which time she accessed the locked medicine cabinet. *Id.* at 89-92.

The Defendant contends that this evidence was insufficient to sustain her conviction for knowingly or intentionally possessing a controlled substance because no controlled substances were actually found in her possession and the identity of the missing pills was not appropriately established at trial. Memorandum in Support of Post-Sentence Motions at 4. The Defendant is correct that she was never found in possession of a controlled substance; however, circumstantial evidence presented at trial established that twelve Adderall pills went missing on the night of December 9, 2015, and that the Defendant accessed the locked medicine cabinet where these pills had been stored. This, combined with the recording from the motion activated camera which demonstrated that Defendant was the only person to enter the nurse's office at the school on the night of December 9, 2015, enabled the trier of fact to conclude, beyond a reasonable doubt, that she was in possession of twelve Adderall pills, a controlled substance, on the night of December 9, 2015.

8

We disagree with Defendant's contention that the Adderall was not appropriately identified at trial. Three nurses that were employed at the school testified that they are familiar with what Adderall looks like, that they had previously dispensed Adderall to V.S., and that they had no reason to believe that the pills that V.S. brought into the school were not the Adderall pills that V.S. and her mother had represented them to be. Transcript of Proceedings at 50, 59-60, 63-64, 69-70; June 9, 2016. This testimony, when viewed in the light most favorable to the Commonwealth, is sufficient to establish beyond a reasonable doubt that the missing pills were in fact Adderall, a controlled substance.

### This Court Did Not Abuse its Discretion in Sentencing Defendant to a Term of Incarceration

Defendant next challenges this Court's imposition of a term of incarceration, claiming that we failed to provide our reasons for doing so on the record. Memorandum in Support of Post-Sentence Motions at 7. Defendant asserts that we simply indicated that the sentence was imposed "for the reasons in the presentence report," despite the presentence report's recommendation of a period of probation. *Id.* Defendant further asserts that the sentence imposed ignored her rehabilitative needs. *Id.*

We are required at the time of sentencing to "state on the record the reasons for the sentence imposed." Pa.R.Crim.P. 704(C)(2). We clearly

9

indicated on the record our reasons for deviating from the presentence report's recommendation. Transcript of Proceedings at 6-7, September 30, 2016 ("I can't in good conscience adopt a recommendation that's going to allow somebody with an untreated addiction, potentially an untreated addiction issue go unchecked."). Our statements at the time of sentencing also made clear that the sentence imposed did not ignore the Defendant's rehabilitative needs, but rather considered the totality of the Defendant's situation. *Id.* at 7 ("I'm not sending her to counseling, because she doesn't think she has a problem."). We did not feel counseling would be effective for this particular Defendant until she acknowledged her substance abuse issues. Moreover, at the conclusion of the Defendant's sentencing, we indicated that we would consider an appropriate petition should the Defendant be able to secure a spot in a rehabilitation program. *Id.* at 24.

*The Prosecution Did Not Deny Defendant a Fair Trial*

Defendant asserts that the prosecution in this matter operated under an "extreme bias and prejudice," to the extent that she was denied a fair trial. Post-Sentence Motions at ¶ 8. Defendant asserts that the criminal information filed by the Commonwealth was "intentionally vague and misleading," in that it inaccurately indicated the date of the charged offenses as "on or about January 20, 2016," rather than December 9, 2015. Memorandum in Support of Post-Sentence Motions at 9. Defendant implies that such inaccuracy inhibited

10

her ability to prepare her defense. *Id.* Defendant further submits that this same inaccuracy, which the Commonwealth failed to cure by amending the information, resulted in the Commonwealth's failure to prove the crimes charged. *Id.* Defendant also objects to the Commonwealth charging twelve counts of knowing or intentional possession of a controlled substance, which she characterizes as an attempt to disparage her in the eyes of the jury. *Id.* at 10. Finally, Defendant cites the Commonwealth's assertion of aggravating factors at the time of sentencing as further evidence of their bias against her because the presentence report recommended a probationary sentence. *Id.*

We disagree that the criminal information was so "vague and misleading" that the Defendant was unable to prepare an adequate defense to the crimes charged. The criminal information alleges that each charged offense occurred "[o]n or about January 20, 2016." December 9, 2015 could well be understood to fall within the period of time indicated by this phrase, and, accordingly, the Commonwealth proved the crimes charged in the criminal information. There is no indication in the record that the Defendant was unprepared to challenge the evidence presented at trial demonstrating that the charged offenses occurred on December 9, 2015. There is similarly no support in the record for Defendant's contention that the jury may have been improperly influenced by the fact that the Commonwealth charged her

11

with twelve counts of knowingly or intentionally possessing a controlled substance.

We also disagree that the Commonwealth's assertion of aggravating factors at the time of sentencing indicated a bias against this Defendant. The Commonwealth submitted the following five aggravating factors for our consideration at the time of sentencing: (1) the Defendant continued to deny her guilt, (2) the Defendant had not accepted responsibility, (3) the Defendant "blame[d] everybody else," (4) the Defendant was uncooperative in providing medical records during the generation of the presentence report, and (5) the Defendant had recently been dispensed 445 narcotic pills from a local pharmacy. Transcript of Proceedings at 20, September 30, 2016. Importantly, we explicitly declined to accept these as aggravating circumstances. *Id.* at 20-21 ("Well I don't know that they truly constitute aggravating circumstances, I don't think that that's appropriate, quite frankly.").

We do not disagree with Defendant's assertion that the Commonwealth's interest in a criminal prosecution is "not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88 (1935). It is also the prosecuting attorney's obligation to zealously pursue the Commonwealth's interests, within the bounds of the law. Pa. R.P.C. Preamble at ¶ 9. The Commonwealth's assertion of circumstances that they believed constituted aggravating factors at the time of sentencing did not amount to a

12

demonstrable bias against this Defendant, and did not ultimately influence the sentence we imposed.

Accordingly, we enter the following ORDER.

13

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA   :      No. 719 CR 2016

                                 :

           v.                         :

KAREN PALAIA,                  :         POST-SENTENCE MOTIONS

        Defendant              :

## ORDER

AND NOW, this __22nd__ day of March, 2017, upon consideration of

Defendant's Post-Sentence Motions and Brief in support thereof, Defendant's

Post-Sentence Motions are **DENIED**.

BY THE COURT:

JENNIFER HARLACHER SIBUM, J.

cc:   District Attorney
      Public Defender
      Probation
      Sheriff

JHS2017.005

14